BENJAMIN S. TAYLOR AND OTHERS v. ALLSTATE
INSURANCE COMPANY AND OTHERS.
HARDWARE MUTUAL CASUALTY COMPANY AND
ANOTHER, APPELLANTS (NO. 41796).
ALLSTATE INSURANCE COMPANY AND
ANOTHER, APPELLANTS (NO. 41805).

176 N. W. (2d) 266.

April 3, 1970—Nos. 41796, 41805.

450

*Miller & Neary* and *Robert J. Neary,* for Hardware Mutual Casualty Company and Velie Motor Company.

*Hoppe & Healy* and *Robert J. Healy,* for Allstate Insurance Company and MacCallum.

*Faegre & Benson* and *Wright W. Brooks,* for Benjamin and James Taylor and The Aetna Casualty and Surety Company.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeals from a declaratory judgment that policies of insurance issued by Allstate Insurance Company (hereinafter referred

to as Allstate) and Hardware Mutual Casualty Company (hereinafter Hardware Mutual) afforded primary coverage to Benjamin S. Taylor and his son, James A. Taylor, and that a policy issued by The Aetna Casualty and Surety Company (hereinafter Aetna) afforded excess insurance; and from the trial court's order denying motions by Hardware Mutual for amended findings and by Allstate and Ian M. MacCallum for a new trial.

The facts according to a stipulation of the parties and the testimony which was taken by deposition are as follows: On February 10, 1966, Benjamin S. Taylor brought his automobile to Velie Motor Company's service garage for repairs. Velie Motor Company had a practice of providing its customers with vehicles while their automobiles were in for repairs. Ian MacCallum, the foreman of the Velie body shop, furnished Benjamin Taylor with one of the "loaners" without charge, whereupon Taylor signed a Velie printed form entitled "Agreement for Loan of Courtesy Car." Taylor drove the courtesy car a short distance and upon becoming dissatisfied with its performance returned it to the shop and requested a different vehicle. MacCallum decided to allow Taylor to use his personally owned 1955 Oldsmobile as a loaner. Taylor signed another "Agreement for Loan of Courtesy Car" covering MacCallum's automobile, which included a provision that he was "[n]ot to allow or cause the vehicle to be loaned, rented, or operated by any person other than myself."

On February 11, 1966, Taylor's son, James Taylor, asked and received permission from his father to use MacCallum's 1955 Oldsmobile to drive to the Navy recruiting station in Crystal, Minnesota. While returning home later that same afternoon, James Taylor was involved in an accident with an automobile owned and operated by Heggie F. Nelson, in which his wife was a passenger. Mrs. Nelson died as a result of injuries sustained in that accident. Nelson brought suit individually for personal injuries sustained, and as trustee for the heirs of his deceased wife for her death, against James Taylor, Benjamin Taylor, Ian MacCallum, and Velie Motor Company.

At the time of the accident, Aetna had in force and effect an automobile liability policy issued to Benjamin Taylor as named insured, describing the car he had in the Velie shop for repairs. In addition to providing coverage for its ownership, maintenance, and use by the named insured and any person using the vehicle with permission of the owner, the policy provided coverage for the use of any temporary substitute automobile, the latter coverage being "excess insurance over any other valid and collectible insurance."

Hardware Mutual had in force and effect a garage liability policy issued to Velie Motor Company as named insured which insured among other things the use of any automobile for the purpose of garage operations.

Allstate had in force and effect an automobile policy issued to MacCallum as named insured which provided coverage for any other other person using his 1955 Oldsmobile, provided its use was with the permission of the named insured.

When Hardware Mutual and Allstate denied that their policies afforded coverage for the liability of James Taylor or Benjamin Taylor and refused to defend them in the suit brought by Nelson, the Taylors and Aetna commenced a declaratory judgment action requesting the court to determine what, if any, coverage was afforded by the respective policies.

The trial court determined that the Taylors were covered as additional insureds under the Allstate and Hardware Mutual policies and that both policies provided primary coverage for any legal liability that either of them had on account of the accident, while the Aetna policy provided "excess" insurance with respect to both the Allstate and Hardware Mutual policies. These appeals by Hardware Mutual, Velie Motors, Allstate, and MacCallum followed.

The issues involved in these appeals are as follows: (1) Was MacCallum's automobile being driven at the time of the accident with his implied permission so as to entitle the driver, James Taylor, to coverage as an additional insured under the Allstate

automobile liability policy even though the agreement under which the car was loaned to Benjamin Taylor recited that the customer was not to allow the vehicle to be operated by any person other than himself? (2) Where a garage follows the practice of loaning cars to customers while their automobiles are in its shop for repairs, and the garage foreman loans his personal automobile to a customer, no suitable garage-owned car being available at the time, has the garage liability insurer avoided being a primary insurer for an accident involving the automobile during the time it was in the customer's possession by limiting the coverage afforded to another person using an automobile for a purpose incidental to the business of the garage with an "escape" clause which is to apply where there is other valid and collectible insurance available? (3) Assuming the garage liability policy affords primary coverage for the accident, what are the applicable limits of its liability?

■ Allstate contends that when MacCallum loaned his automobile to Benjamin Taylor the permission to use the car did not extend to his son, James Taylor, especially since the father signed the agreement which included a provision that he was not to allow the vehicle to be operated by any person other than himself. There is no dispute over the fact that permission was given by Benjamin Taylor to his son to use the automobile. The ultimate issue is whether MacCallum gave his permission to James Taylor to use the automobile.

It is not essential that express permission be given for use of an automobile in order to give the operator protection as an additional insured under an omnibus clause. Permission for such use may be inferred from all the facts and circumstances of the case. Anderson v. Hedges Motor Co. 282 Minn. 217, 164 N. W. (2d) 364; 7 Appleman, Insurance Law and Practice, § 4365.

The deposition testimony presented a fact issue as to whether Benjamin Taylor was informed of any limitation being placed on the use of the 1955 Oldsmobile. He testified that he had made the Velie people aware at the time he brought his car to the

garage for repairs that his family would need another automobile to use. The Velie people knew that members of Benjamin Taylor's family drove his car. Mr. Taylor also testified that he did not read the agreement which he signed and that he did not recall being told that he was not allowed to let anyone else drive the automobile. It is undisputed that he was not given a copy of the loan agreement. On the other hand, Ian MacCallum testified that he reviewed the agreement with Benjamin Taylor and specifically the clause prohibiting use of the car by anyone else. He claimed that Benjamin Taylor had ample opportunity to read the agreement and did in fact read it in his presence. MacCallum acknowledged that he knew there was a good likelihood that when a customer was loaned an automobile to use while the family car was being repaired, there would be other members of the family driving the car. Another Velie employee acknowledged that it was not his practice to stress the provision about not loaning the car to anyone else.

The trial court found that Benjamin Taylor signed the agreement without reading it; that MacCallum did not tell Taylor not to let anyone else use the car; that Taylor's attention was not called to the provision in the form prohibiting anyone other than the customer from driving the car; that in loaning a car to a customer to use while the family car was being repaired, Velie and MacCallum could naturally expect other members of the customer's family to operate the car; and that at the time of the accident James Taylor was using the 1955 Oldsmobile with the permission of his father and with the implied permission of both MacCallum and Velie Motors.

■ This court has construed the term "consent" as used in the phrase "operated * * * by any person other than the owner, with the consent of the owner, express or implied" in Minn. St. 170.54 of the Safety Responsibility Act to include the situation where a bailee is a member of the bailor's immediate family or is the bailor's employee and he gives a third person permission to drive the automobile in contravention of instructions by the

bailor forbidding anyone else to drive it, while the bailee remains as a passenger in the vehicle. Lange v. Potter, 270 Minn. 173, 132 N. W. (2d) 734; Mullin v. The Fidelity & Casualty Co. 271 Minn. 551, 136 N. W. (2d) 613. The term "consent" in the Safety Responsibility Act has been treated by this court synonymously with the term "permission" as used in customary omnibus clauses. Allied Mutual Casualty Co. v. Nelson, 274 Minn. 297, 143 N. W. (2d) 635. Although in both the Lange and Mullin cases the first permittee, as passenger, was in a real sense "using" the automobile due to his "control" over the driver, the same reasoning applies in the instant situation where the first permittee was not present in the car. Although Benjamin Taylor did not have control over the actual mechanical operation of the car, he still had control over who would drive and for what purpose.

We conclude that where the 1955 Oldsmobile was lent by MacCallum to Benjamin Taylor for general use, and Taylor in turn permitted its use by his son, such use is deemed to be with permission of MacCallum. It is the clear implication that Taylor was authorized to use the car as his personal car ordinarily would be used. MacCallum and Velie should have been on notice that a personal passenger automobile would be used in the way the 1955 Oldsmobile was used in this case. See, Utica Mutual Ins. Co. v. Rollason (4 Cir.) 246 F. (2d) 105. We believe that the trial court was justified on the evidence in finding that MacCallum impliedly permitted James Taylor to use his vehicle.

■ The fact that Benjamin Taylor signed a loan agreement which contained a provision prohibiting him from allowing anyone else to use the vehicle does not change our holding. The trial court found that Taylor was not made aware of this provision, nor did he receive a copy of what he had signed. This provision was therefore legally ineffective under the circumstances of this case. See, Miller v. Macalester College, 262 Minn. 418, 115 N. W. (2d) 666; Financial Indemnity Co. v. Hertz Corp. 226 Cal. App. (2d) 689, 38 Cal. Rptr. 249.

■ With regard to the second issue, Hardware Mutual and

Velie Motors contend that since Allstate is the primary insurer of the Taylors, such primary liability activates the "escape" clause of Hardware Mutual's policy providing that it affords no coverage if there is "other valid and collectible automobile liability insurance, either primary or excess" available.

The Hardware Mutual policy issued to Velie Motors had the following applicable provisions:

"PART I—LIABILITY
\*   \*   \*   \*   \*

"Garage Operations Hazard

"The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'.

"Automobile Hazards

"1. *All Automobiles*

"(a)   The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and

"(b)   The ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use.

\*   \*   \*   \*   \*

"Persons Insured

"Each of the following is an insured under Part I, except as provided below:

\*   \*   \*   \*   \*

"(3)   With respect to the Automobile Hazard:

"(a)   any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided

such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,

"(b)   any person while using an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."

The policy also contained the following endorsement:

"In consideration of the reduced rate of premium made applicable to the insurance under Part I, it is agreed that this policy section is amended as follows:

"1.   Paragraph 3 of 'Persons Insured' is amended to read as follows, and Paragraphs 4 and 5 below are added, all subject to exceptions (i), (ii), (iii) and (iv) as set forth in this policy section.

" '(3)   With respect to an automobile to which the insurance applies under paragraph 1(a) of the Automobile Hazards, any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission:

\*   \*   \*   \*   \*

" '(b)   any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess, with limits of liability at least equal to the minimum limits specified by the financial responsibility law of the state in which the automobile is principally garaged, is available to such person \* \* \*.

" '(4)   With respect to an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards, any person while using such automobile with the permission of the person or organization to whom such automobile is furnished, provided such person's actual operation or (if he is not oper-

ating) his other actual use thereof is within the scope of such permission * * *.' "

Appellants Hardware Mutual and Velie contend that the 1955 Oldsmobile was a 1(a) automobile and as such is excluded from coverage under the "escape" clause in the endorsement. They reason that the automobile must be a 1(a) automobile due to the requirement that a vehicle must be owned by the named insured in order to be classified 1(b) and the 1955 Oldsmobile was not owned by Velie.

We disagree and find that the 1955 Oldsmobile is a 1(b) automobile to which the "escape" clause is inapplicable. The first portion of paragraph 1(a) includes automobiles which are owned, maintained, or used for the purpose of garage operations. The second portion includes automobiles owned by or in charge of the named insured and used for nonbusiness purposes even though they are used principally in garage operations. The automobile involved in the instant case was owned by MacCallum personally. Consequently, it was not used "principally" in garage operations as required by the second portion of the 1(a) classification. Since the intent of the insurance company in drafting this clause in its "Automobile Hazards" section probably was to deal with automobiles which were *principally* used in garage operations as evidenced by the second portion of the 1(a) clause, this intent we presume was necessarily present throughout the drafting of the entire clause. Thus, the first portion of the 1(a) clause is interpreted to encompass automobiles owned, maintained, or used principally in garage operations. Again, since MacCallum's automobile was owned and used as his personal automobile, it was not owned, used, or maintained principally for garage operations and was not, therefore, a 1(a) automobile.

Although the trial court did not specifically classify the 1955 Oldsmobile as 1(a) or 1(b) under the Hardware Mutual policy, its finding that Benjamin Taylor was within the class of persons to whom Velie furnished automobiles for their regular use is consistent with the latter classification.

The words "owned by the named insured" are not defined in the policy. In Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 116 N. W. (2d) 605, the insurer had denied coverage under an automobile liability policy on the ground that the accident-involved car was not owned by the named insured, but by his son, and so was not an "owned automobile" within the policy meaning. When the named insured later sued for expenses he had incurred in successfully defending a lawsuit brought against him and his son on account of the accident, this court allowed him to recover because the terms "owned by the named insured" and "ownership" were ambiguous in their context and could be deemed to include anyone with an insurable interest, i. e., anyone who might be held liable for damages on account of the operation of the car.

Thus, where a garage loans automobiles to customers, as Velie does in this case, the words "owned by the named insured," as used in paragraph 1(b) of Automobile Hazards, we construe to include not only the automobiles which Velie legally owns and uses for loans to customers but also automobiles, such as MacCallum's, which are occasionally loaned to customers. It is significant to note that even though the 1955 Oldsmobile was technically owned by MacCallum, it was loaned to Benjamin Taylor under a Velie loan agreement. This loan arrangement further buttresses our conclusion that the accident-involved automobile was an automobile "owned by the named insured" under paragraph 1(b).

Since the accident-involved vehicle was a 1(b) automobile to which the "escape" provision is inapplicable, it is unnecessary to rule on the legal effectiveness of such provision. The case of Federal Ins. Co. v. Prestemon, 278 Minn. 218, 153 N. W. (2d) 429, is not authority for invalidating the clause under the circumstances of the instant case since Prestemon dealt with two insurance policies which were mutually repugnant to each other—one policy containing an "excess insurance" clause and the other policy containing a "no liability" clause. The policy containing

the "no liability" clause was found to provide primary coverage. In the instant case, we do not have inconsistent policies but rather a policy which provides primary coverage (Allstate) and a policy with a "no liability" provision. We reserve ruling on the legal effectiveness of this type of exculpatory clause. We point out, however, that Minnesota requires automobile liability insurance policies to contain omnibus insurance coverage. Minn. St. 170.40. Other state supreme courts have expressed a policy of not altering omnibus insurance clauses and of providing permissive users with the same coverage as the named insured. Willis v. Security Ins. Group, 104 N. J. Super. 410, 250 A. (2d) 158, affirmed, 53 N. J. 260, 250 A. (2d) 129; American Motorists Ins. Co. v. Kaplan, 209 Va. 53, 161 S. E. (2d) 675.

Hardware Mutual also contends that if it is to be required to share responsibility with Allstate on a pro rata basis, then the applicable limit of its liability should be placed at $10,000/ $20,000/$5,000 under a policy endorsement. This endorsement limits liability only with respect to certain persons using a 1(a) automobile. Thus, for precisely the same reasons that Hardware Mutual cannot avoid primary coverage, it cannot avoid having its pro rata liability calculated on the basis of the Hardware Mutual limits of liability, $250,000/$500,000/$100,000.

After a very careful consideration of the record herein, we reach the conclusion that the findings must be sustained. Where there is evidence reasonably tending to sustain the findings of the trial court, such findings must be sustained. The function of a court of review is not to weigh the evidence as if trying the matter de novo but to determine from an examination of the record if the evidence as a whole sustains the trial court's findings, and, if so sustained, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary. Bolduc v. New York Fire Ins. Co. 244 Minn. 192, 69 N. W. (2d) 660.

We conclude that the trial court has properly resolved the issues of this case, and the judgment is affirmed.

Affirmed.