ROBERT STEWART AND ANOTHER v.
GLORIA A. ANDERSON AND ANOTHER.
DOUGLAS A. OLSON AND ANOTHER,
THIRD-PARTY DEFENDANTS.
ALLSTATE INSURANCE COMPANIES,
FOURTH-PARTY DEFENDANT.

246 N. W. 2d 576.

October 15, 1976—No. 46025.

*Kressel, Cecere & Seiler* and *John G. Kressel,* for appellants.
*Robert L. Hoppe,* for respondents Carls and Allstate.
*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp &
Brennan, J. Richard Bland,* and *O. C. Adamson II,* for third-
party defendant Olson.

Heard before Rogosheske, Peterson, and Yetka, JJ., and con-
sidered and decided by the court en banc.

PETERSON, JUSTICE.

This appeal arises from a dispute among the parties whether
the driver of one automobile in a three-automobile collision was
operating the vehicle with the consent or permission of the
owner. If he was, then pursuant to Minn. St. 170.54 the owner
of the vehicle is liable for any negligence on the part of the
driver, and the owner's insurance policy indemnifies the owner
for this liability. The district court concluded from the undis-
puted evidentiary facts that the vehicle was being operated with
the implied consent or permission of the owner. We affirm.

On the evening of August 24, 1969, David Carls was driving
an automobile owned by Gloria Anderson. As Carls proceeded
south on Normandale Avenue in Bloomington, the automobile
collided with a northbound automobile driven by Robert Stewart
and in which John Stewart was a passenger. Also involved in
the collision was another northbound vehicle driven by Douglas
A. Olson. Impleaded into the litigation among these parties was
Hardware Dealers Mutual Casualty Company, which insured
Anderson against liability she might incur because of the negli-
gence of one driving her automobile with her permission, and
Allstate Insurance Companies, which insured Carls against lia-
bility for his own negligence while driving the automobile of an-
other. This dispute is primarily between the two insurance com-
panies.

Gloria Anderson and her husband had for a number of years

had a close social relationship with David Carls and his wife. On numerous occasions, as often as three times each week, the couples saw each other socially in the home of one and then the other. Each couple was named as the godparents of one of the other couple's children. The husbands worked together at Target Stores, were best friends, and had had a close business relationship for about 4 years. They arranged trips and traveled together on business matters, usually renting automobiles and sharing the driving. Although Mrs. Anderson owned the automobile involved in the case at bar, her husband had full authority to direct its use and once, when the Carls automobile was malfunctioning, Mr. Anderson allowed Mr. Carls to use one of the Anderson automobiles for a week. On numerous other occasions Carls had borrowed one of the Anderson automobiles with express permission for short errands. When they went hunting, each of the men shared the driving of the automobile which is now involved in the case at bar.

On August 24, 1969, the Carls visited the Anderson home and assisted in the remodeling of a bedroom. Later that evening the Andersons called for the Carls at their home and both couples drove in the Anderson automobile to the home of the James F. Richards, where they planned to have dinner and cocktails and to watch a Minnesota Viking football game. Mr. Anderson drove and upon arriving at the Richard home tossed the keys to the automobile into Mrs. Anderson's purse, which she had placed on a small table in the entryway. Later during the course of the evening Mr. Anderson twice used the automobile to purchase cigarettes and other items. Mr. Richard accompanied him on one of these trips. The testimony was unclear what happened to the keys to the automobile following the last of these errands, but at trial Richard thought they were probably placed again on the front hallway table.

After dinner Carls and his wife strolled together along a lake which abutted the back yard of the Richard home, but his wife walked back to the house by herself. When dessert was served

Mr. Anderson noticed that Mr. Carls was missing and went to look for him. He discovered that the automobile was gone and told Richard that Mr. Carls and the automobile were missing. He then returned to the group for about 10 minutes. Later on Mr. Anderson theorized that perhaps Carls had gone for cigars, for both men smoked cigars and customarily enjoyed one after dinner. Although they had no cigars with them on that evening, someone had said, "a cigar would be pretty good now [on] a full stomach."

Mr. Anderson was concerned about the absence of Carls and the automobile and after a few minutes he and Richard went to look for Carls, coming upon the scene of the collision soon thereafter. Carls suffered retrograde amnesia and could remember nothing after the time he was walking by the lake with his wife. No evidence suggests that the Andersons ever objected to Carls' use of the automobile or that if express permission had been requested it would have been denied.

The issue presented is whether the district court's finding that Carls drove the automobile with the implied permission or consent[1] of Mrs. Anderson was clearly erroneous. Rule 52.01, Rules of Civil Procedure. While permission was not expressly granted, the very concept of implied permission is that under some factual situations permission may be found even though not expressly granted. The strongest evidence of implied permission would be a series of prior uses without express permission and yet without objection by the owner. While in the case at bar all prior uses of the automobile by Carls were with express permission, in view of the intimate inter-family relationship and the other undisputed evidentiary facts in the case at bar, we are unable to say that the district court's finding of implied permission was clearly erroneous.

---

[1] We have said previously that "consent" as used in Minn. St. 170.54 is synonymous with "permission" as used in customary omnibus clauses. Taylor v. Allstate Ins. Co. 286 Minn. 449, 454, 176 N. W. 2d 266, 270 (1970).

The district court's finding has support in other cases. In Beebe v. Kleidon, 242 Minn. 521, 65 N. W. 2d 614 (1954), we upheld a jury's finding that a 15-year-old grandchild of the defendant automobile owner used the defendant's automobile with the defendant's implied consent. The grandparents had driven the automobile to a relative's house to visit. The grandchild arrived later, and although he took the automobile without obtaining express consent, we upheld the jury's verdict because the evidence showed that the grandchild had answered in the negative when asked if he usually obtained permission before taking the automobile, because he had stated that his grandfather had given him a set of keys which he kept in his possession (a fact the grandfather verified), and because the grandfather had surmised on finding the automobile missing that perhaps the grandchild had taken it. The evidence in that case also showed that the grandfather had obtained a restricted license for the grandchild which permitted him to drive only with his grandmother, although the jury could have found that he had driven alone on some occasions.[2] Similar foreign cases, which need not be discussed in detail, include the following: Home Ind. Co. v. Norton, 260 F. 2d 510 (7 Cir. 1958); Nationwide Mutual Ins. Co. v. Vaughn, 307 F. Supp. 805 (W. D. Va. 1969); Talbot

---

[2] Although not squarely in point, Western Nat. Mutual Ins. Co. v. Auto-Owners Ins. Co. 300 Minn. 401, 220 N. W. 2d 362 (1974), lends some additional support to our conclusion. We there upheld the district court's finding that Michele Ehlert drove an automobile with the permission of Gregory Hanson. The automobile belonged to Gregory's father, who had given Gregory permission to use it. He in turn gave Michele express permission to drive the automobile to a nearby Dairy Queen from the place the couple was picnicking near Lake Nokomis in Minneapolis. After returning from the Dairy Queen and while Gregory was asleep on a blanket, Michele again took the keys and drove the automobile without Gregory's express permission. On these evidentiary facts the district court found that Gregory had given Michele permission to drive to the Dairy Queen and had not withdrawn or cancelled that permission after they returned, a finding which we held not clearly erroneous.

v. Allstate Ins. Co. 76 So. 2d 76 (La. App. 1954); Owens v. Dinkins, 345 Mass. 106, 185 N. E. 2d 645 (1962); Bourne v. Manley, 435 S. W. 2d 420 (Mo. App. 1968).

This being the sole issue raised on this appeal, the judgment of the district court is affirmed.

Affirmed.