RELIANCE INSURANCE COMPANY,
Appellant,

v.

Barrett STACK, Respondent,

Henry Gilbert Sullwold, et al.,
Respondents,

Arthur M. Holm d. b. a. Arthur M. Holm
Land Surveyors, Respondent.

No. 48777.

Supreme Court of Minnesota.

Aug. 17, 1979.

Cousineau McGuire, Shaughnessy & Anderson and Robert J. McGuire, Minneapolis, for appellant.

Robert W. Gislason and James T. Martin, Edina, for Stack.

Rider, Bennett, Egan & Arundel, David F. Fitzgerald and Eric J. Magnuson, Minneapolis, for Stack and Sullwold.

Heard by OTIS, KELLY, and SCOTT, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Plaintiff Reliance Insurance Company appeals from a declaratory judgment entered in Washington County District Court, pursuant to an order by Thomas G. Forsberg, Chief Judge of the Tenth Judicial District.[1] The judgment determined that a policy issued by Reliance did provide coverage for defendant Barrett Stack and the insurer wrongfully rejected his tender of defense in a contribution suit.

Reliance had refused to defend Stack of the ground that he had been operating a vehicle without the permission of its owner and Reliance's insured, Arthur Holm, who was also Stack's employer. The trial court determined that Stack had Holm's implied consent to use the vehicle at the time of the accident in question.[2] Accordingly, Stack was deemed Holm's agent under § 170.54 of the safety responsibility statute and the Reliance policy was held to cover him.

The central issue is whether Holm may be said to have given implied consent on the basis of the evidence and the trial court's findings.[3] The standard to be applied is whether the decision is clearly erroneous, viewing the facts in the light most favorable to the prevailing party. Rule 52.01, Minn.Rules of Civil Procedure; *Shelby Mutual Insurance Co. v. Kleman*, 255 N.W.2d 231, 233, 234 (Minn.1977); *Stewart v. Anderson*, 310 Minn. 495, 498, 246 N.W.2d 576, 577 (1976).

Ample support for the conclusion exists in the findings based upon Holm's own testimony that he probably would have given consent at the time; his practice of condoning small business favors, including this one; and the measure of discretion he had given to Stack. In the absence of evidence showing a clear time restriction, we hold that the determination of the requisite consent and statutory agency were not clearly erroneous.

Barrett Stack had been employed by Arthur Holm Land Surveyors for approximately six years by October 5, 1973, when the accident which was the subject of a separate lawsuit occurred. Stack was not a licensed surveyor, but was second to Holm in charge of the field crew and he normally had custody, with Holm's knowledge and consent, of Holm's 1968 Chevrolet Carryall Van which was used to store equipment and transport the crew to survey sites, and was insured under an automobile liability policy issued to Holm by Reliance. Stack drove the van to and from the Lake Elmo, Minnesota, office so it would be available for business use between 8 a. m. and 4:30 p. m., and was entrusted with it during the evenings and weekends and for servicing by himself or on the company's gasoline credit cards.

---

1. The case was tried by Judge William T. Johnson without a jury, and his findings of fact, conclusions of law and order for judgment were filed before he suffered a disabling stroke and was replaced by Judge Forsberg.

2. The lower court also concluded that Holm had ratified the use of the vehicle by his conduct after the accident. Reliance asserts on appeal that the conclusions are contradictory and we agree. But in view of our holding that Stack had implied consent, ratification was unnecessary to support the judgment and we look upon that portion of the decision as harmless error.

3. The insurer moved for amended findings or new trial, charging as error the failure to permit Reliance to cross-examine Holm or use leading questions regarding his deposition in order to characterize the work Stack was doing as personal rather than business in nature. With the change of judges the motion was not decided, and Reliance also appeals from that failure to rule, apparently on the ground it prevents our review of the specified errors.

The errors charged relate only to the determination that Stack was engaged in work for Holm's business. For the reasons stated in the opinion, the nature of the activity as part-business is sufficiently established by other evidence, eliminating any need to review the charges on the new trial motion and rendering the failure to rule on the motion equally nonprejudicial.

He had obtained express permission to use the van for clearly personal or combined personal and business purposes on other occasions, but had not sought permission to use it on the occasion of the accident or on a Saturday about two years earlier for work he had done with the same realtor. On the prior occasion, Holm had queried Stack shortly after observing the van in transit. Stack testified at the trial of this contribution action that on the earlier occasion Holm said he "wanted to know when the truck was going to move," but also told Stack "that he trusted [his] judgment." Holm did not dispute that testimony, but recalled that he had said:

"[W]henever that vehicle is used, I want to know what it's being used for and who's using it, and specifically what the situation is. I was perturbed when I got home and I wanted to make it abundantly clear to him at that time that this was was not a vehicle that he could go out and do a little extra work on Saturday or something like that, that he thought was necessary, without my permission."

Several days before the accident, the victim William Stouvenel called Stack at his office to request his assistance some evening in measuring Stouvenel's recently purchased property in order to verify the setback of a building for zoning purposes. Stouvenel had been a personal friend of Stack's for several years, and he owned a real estate business near the Holm office. The Holm service did boundary work for Stouvenel's firm on a regular basis and Stack gratuitously traced legal descriptions for free use of the real estate company's photocopying equipment and notarial services, in accord with the custom in the business community of exchanging favors.

Holm was aware of these practices and testified that he had no objection to Stack's performing such favors requiring only a short period of time.

Stouvenel renewed his request for assistance in a call to Stack's home in Stillwater about 6:30 p. m. the day of the accident. Assuming Holm would not object, Stack drove the van to meet Stouvenel at the site shortly thereafter. He parked it with the hazard signals flashing along the shoulder of the road facing west in front of the property. While Stouvenel was standing in the vicinity of the truck and the road during the measuring, Henry Sullwold struck him as he was driving westward.[4]

Stack notified Holm immediately, and testified that Holm was not happy about the van's being there, but at no time criticized him. According to Holm, he was "quite miffed" by Stack's using the truck and equipment and working without permission, but did accept Stack's explanation. On cross-examination by Sullwold's attorney the following exchange took place:

"Q. Well, if Bill Stouvenel had called you, Mr. Holm, and said would you have any objection if Barry stops by on his way home from work or comes out here for a couple of minutes to take a measurement for me, is that the kind of thing that we have talked about where you might say go ahead and do it?

"A. If you're speaking of a couple minutes, in that context, I would probably say yes, it would be all right."

With Holm's knowledge and consent and at Stouvenel's request, the measurements eventually were completed by Stack and another employee using the van during business hours en route to another job. A sketch was prepared, but Stouvenel was not

4. Counsel indicated at oral argument that Stouvenel pursued a workers' compensation claim and recovered to some extent under his own insurance policy as well. Whatever the method of his recovery, it is clear from the trial court documents that he also sued Sullwold at some point for $225,000 and Sullwold named Stack as third-party defendant. Sullwold then settled for $68,750 and sued Stack directly for contribution as a joint tortfeasor.

Although it is undetermined whether Stack is entitled to coverage by another insurer who defended him at trial under a reservation of right, we disregard the failure to answer that question prior to this appeal in light of the fact that Stouvenel has recovered and our decision today that Reliance is required to defend.

charged for the project. Stack testified the failure to bill might have an oversight, and he and Holm agreed the accident may have had something to do with it.

Much of the testimony focused on whether Stack's work for Stouvenel was personal or performed on behalf of the business. Stack viewed it as both a personal and business favor, admitting that his wife owed money to Stouvenel but denying his work was intended to reduce the debt in any manner. He did not know at the time whether professional services requiring a charge by the firm would follow. Holm viewed the work as outside the regular practice for a survey request—the purpose being merely to measure the setback—but also testified that such a project would have been billed if Holm had done the work himself. He did not know whether any indebtedness was ever reduced in fact.

The court found that Stack was Holm's employee with right of possession to the vehicle; that Stouvenel asked for Stack's assistance in accord with the favor-exchange practice in which Holm had acquiesced; that Holm stated he likely would have given permission if requested directly by Stouvenel; that he did authorize completion of the measurements without charging for any services; and that Stack stated he would not have used the van if he thought Holm would object.

Neither the fact that Holm owned the van nor that he was Stack's employer is disputed. Rather, Reliance premised its suit upon the absence of the consent required by its owner's policy and the court based its decision on the agency relationship presumed under Minn.St. 170.54. Our analysis freely focuses on the statute which is interchangeable with the insurance policy for purposes of the consent required for the owner's liability.[5] It provides:

> "Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

In an undisputed master-servant situation, liability under the statute is predicated upon agency arising out of the scope of consent rather than the scope of employment. *Flaugh v. Egan Chevrolet, Inc.*, 202 Minn. 615, 622, 279 N.W. 582, 586 (1938). The two may coincide such that the reach of consent equals or exceeds the scope of employment, or consent may be absent or qualified. *Flaugh, supra; Abbey v. Northern States Power Co.*, 199 Minn. 41, 271 N.W. 122 (1937); *Ewer v. Coppe*, 199 Minn. 78, 271 N.W. 101 (1937); *Patterson-Stocking, Inc. v. Dunn Bros. Storage Warehouses, Inc.*, 201 Minn. 308, 312, 276 N.W. 737, 739 (1937). Proof of ownership by the employer establishes a prima facie inference of consent, but is rebuttable by evidence of no consent at the time and place in question. *Truman v. United Products Corp.*, 217 Minn. 155, 14 N.W.2d 120 (1944); *Patterson-Stocking, Inc. v. Dunn Bros. Storage Warehouses, supra.*

To support its rebuttal of the prima facie inference herein, the insurer points to the outstanding debt and the failure to bill Stouvenel to show that the use was entirely personal, exceeding a business-only restriction. Then it relies upon Holm's admonition to Stack on a Saturday two years earlier to show that the 6:30 p. m. meeting also exceeded a business-hours restriction.

We view both of these approaches as unavailing in light of Holm's testimony that he probably would have authorized a quick trip to do this particular measurement. See, *Stewart v. Anderson*, 310 Minn. 495, 498, 246 N.W.2d 576, 577 (1976), where we considered significant the lack of any suggestion that express permission would have been denied.

The activity here was appropriate for an employee and required only a short drive

---

5. "We have said previously that 'consent' as used in Minn.St. 170.54 is synonymous with 'permission' as used in customary omnibus clauses. *Taylor v. Allstate Ins. Co.*, 286 Minn. 449, 454, 176 N.W.2d 266, 270 (1970)." *Stewart v. Anderson*, 310 Minn. 495, 498, 246 N.W.2d 576, 577 note 1 (1976).

from Stack's home where the van was garaged. Additionally, it was not unlike tracing a legal description—an uncomplicated function which Holm acknowledged had been performed for Stouvenel without charge or objection—and it was a small enough job in Holm's view to come within the custom and practice among local businessmen of exchanging occasional favors by their employees.

The admitted likelihood of Holm's approval reasonably could have stemmed from those factors characterizing the job as a business activity, notwithstanding the personal friendship between Stack and Stouvenel. Despite the fact that the friendship and possibly the debt entered into the favor, the personal aspect did not disqualify the job from the category of an employment function.

■ The law is clear that unless an employee totally deviates from his employment for purposes that are entirely personal, performance of a function within the scope of employment for personal purposes does not destroy the agency relationship so far as the employer's vicarious liability may be concerned. *National Battery Co. v. Levy*, 126 F.2d 33, 35 (8 Cir. 1942). As Stack's measuring in this case thus could not have altered the employer-employee relationship, and in fact was completed later during business hours with Holm's acknowledged approval, we find no basis for finding that it exceeded a business-only restriction.

■ The alleged time deviation is no more persuasive a rebuttal than the personal use deviation. Holm's admonition on the single prior occasion indicated a concern that Stack might take advantage of the privilege of possessing the van by using it freely on his own time. No precise business-hours restriction was then placed upon Stack, however, nor was he told he should not have taken the truck on that Saturday two years before the accident. Indeed, he was given the discretion to use his own judgment as to whether Holm would object, and such a judgment was made on the evening of the accident. The measuring could hardly be classified as "moonlight-

ing," even at 6:30, when it was merely preliminary to a potential survey which would have required the licensed services or at least the signature of Holm himself and decidedly would not have been gratuitous.

In other employer-employee cases we have insisted that rebuttal evidence must clearly show that consent was exceeded. See, e. g., *Eicher v. Universal Underwriters*, 250 Minn. 7, 13, 83 N.W.2d 895, 899 (1957) (action based on insurance clause rather than statute); *Truman v. United Products Corp.*, 217 Minn. 155, 14 N.W.2d 120 (1944); *Schultz v. Swift & Co.*, 210 Minn. 533, 537, 299 N.W. 7, 9 (1941); *Ranthum v. Sterling Motor Co.*, 202 Minn. 209, 277 N.W. 547 (1938).

As we said in *Eicher, supra* :

" * * * If other evidence makes the issue inconclusive, or if different inferences may be drawn therefrom, or if the credibility of such testimony may be in question, the issue is for the finders of fact." (Citation omitted.)

250 Minn. 12, 83 N.W.2d 899. The evidence before us in its entirety at least makes the issue inconclusive and permits of different inferences. Thus we cannot say the decision below was clearly erroneous.

Our standard and decision are wholly consistent with our nonemployee cases as well which also foster the policy of ensuring that coverage is provided for victims of automobile accidents. See, *Stewart v. Anderson*, 310 Minn. 495, 246 N.W.2d 576 (1976); *Shuck v. Means*, 302 Minn. 93, 96, 226 N.W.2d 285, 287 (1974). We believe continuation of that policy is appropriate in this instance.

Affirmed.

TODD and WAHL, JJ., took no part in the consideration or decision of this case.