STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOMINGTON, ILL. v. MARJORIE JEAN DELLWO AND OTHERS. WILLIAM A. JOHNSON, APPELLANT.

220 N. W. 2d 367.

July 19, 1974—No. 44391.

*Rider, Bennett, Egan, Johnson & Arundel, Chester D. Johnson, Smith & Persian,* and *Donald K. Smith,* for appellant.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II, Mary Jeanne Coyne,* and *Robert M. Frisbee,* for respondent.

Heard before Sheran, C. J., and Todd, MacLaughlin, and McRae, JJ., and considered and decided by the court.

MacLAUGHLIN, JUSTICE.

Plaintiff, State Farm Mutual Automobile Insurance Company, brought a declaratory judgment action seeking a determination that a policy of automobile liability insurance issued by it to one Raymond K. Sheeley did not apply to claims arising out of a collision on July 25, 1971, involving Sheeley's motor vehicle and one driven by defendant William A. Johnson, because Sheeley's vehicle was being operated at the time of the accident without his consent, express or implied. The case was tried to a jury, but at the close of the presentation of all the evidence, the trial court granted plaintiff's motion for a directed verdict. Defendant Johnson appeals from an order denying his motion for a new trial. We affirm the trial court.

The issue is whether Sheeley's pickup truck was being operated at the time of the accident with his consent, express or implied. When the accident occurred, the truck was occupied by Sheeley's two sons, Randy and Robin, ages 15 and 16, respectively, and a 17-year-old friend, Steve Dellwo. Randy and Steve Dellwo were killed in the accident.

In the fall of 1970, the Sheeley family moved to a 5-acre farm in rural Sherburne County on which they kept two horses. In November 1970, Sheeley purchased a pickup truck to use primarily to haul manure and hay on the farm. Thereafter, he gave his sons, Randy and Robin, instructions on how to drive it. Both Mr. Sheeley and Robin testified that the boys were given permission to use the truck only to do chores on the farm, and then only when either Mr. or Mrs. Sheeley was home. Robin and Mr.

Sheeley also testified, as did Mrs. Sheeley, that because the boys were not licensed drivers they were instructed never to use the truck on the public roads.

Mr. and Mrs. Sheeley were employed and regularly left for work between 6:30 and 7 each morning and did not return home until 6 p.m. At some point in time, the boys began to frequently use the truck on the public highways to drive to various surrounding towns and to Minneapolis, both on school days when they arrived home before their parents and on nonschool days when their parents were working. Mr. Sheeley was aware that the boys were using the truck on the farm from time to time when he was not present, but according to Sheeley, he was unaware that they used it on the public highways until about 2 months prior to the accident when he learned of an incident where the boys had rolled the truck over into a ditch while they were operating it on the highway. As a result of the rollover, Sheeley became very angry with the boys, and they were instructed not to use the truck again. However, Sheeley learned that the boys drove the truck on one occasion after the rollover when it was taken to a friend's garage for repairs. Again, the boys were severely reprimanded and instructed not to use the truck. Sometime subsequent to either the rollover or the occasion on which the truck was driven to the garage for repairs, Mrs. Sheeley took the keys from a vase in which they had been hidden and put them in a place unknown even to Mr. Sheeley.

Everyone agrees that the boys were never able to find the keys after they were hidden by Mrs. Sheeley, but they did discover that by inserting the blade of a long, sharp knife into the lock the ignition could be turned on and the truck started. They operated the truck in that manner several times until they were no longer able to start it with a knife. At that point they began starting the truck by pulling out the cylinder into which the key would normally fit and using a screwdriver to turn a mechanism inside the hole from which the ignition cylinder had been removed. The boys would replace the cylinder each time after using

the truck, but about 2 weeks before the accident they lost the cylinder, and there was only a hole in the instrument panel where the ignition was supposed to be.

Sheeley testified that he did not drive the truck after the roll-over incident and did not enter the truck after the time he discovered it had been taken by the boys for repairs. He said that he was unaware that the boys were able to start the truck without the keys and never knew that the ignition cylinder was missing from the instrument panel. Robin confirmed that, to his knowledge, his father was not aware that the boys were starting and using the truck by means of the knife or the removal of the cylinder and that his father was unaware that the cylinder was missing for 2 weeks prior to the accident.

On the night of the accident, the Sheeleys went to a party at a neighbor's home. While on their way home, they were notified of the accident in which Randy and Steve were killed and the appellant injured. The record does not disclose who was driving the truck at the time of the accident, but there is no question that the boys did not have express consent from either Mr. or Mrs. Sheeley to operate the truck at the time.

We have repeatedly stated that the vicarious liability statute, Minn. St. 170.54,[1] must be liberally construed to accomplish its purpose of making the owner of a motor vehicle liable to those injured by its operation upon public streets and highways. This is particularly true in cases involving minor permittees and sub-permittees. Western National Mutual Ins. Co. v. Auto-Owners Ins. Co. 300 Minn. 401, 220 N. W. 2d 362 (1974). However, the liability of a parent for damages caused by the operation of his automobile by his children is not absolute. In Granley v.

---

[1] Minn. St. 170.54 provides: "Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

Crandall, 288 Minn. 310, 313, 180 N. W. 2d 190, 192 (1970), we said:

"* * * To sustain the burden of proving lack of consent will require a strong showing that the car was being used by the child without the parent's knowledge and contrary to his explicit instructions * * *."

While it probably would have been the better procedural practice in this case to submit the question to the jury,[2] we hold that the trial court did not err in directing a verdict. A careful review of the record convinces us, as it did the trial court, that the Sheeleys took every reasonable precaution short of disposing of the truck to prevent its operation by Randy and Robin. It is clear that the truck was continually being used contrary to Mr. and Mrs. Sheeley's explicit instructions. Further, the record does not disclose that the Sheeleys knew, or should have known, that the boys were continuing to operate the truck in spite of the Sheeleys' instructions, admonitions, and precautions. Viewing the entire evidence most favorably to the appellant, we have concluded that it would have been the manifest duty of the trial court to set aside a jury verdict for the appellant. Therefore, the trial court must be affirmed.

Affirmed.

---

[2] 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 315, states: "As a practical matter, many courts are reluctant to grant a motion for a directed verdict at the end of all of the evidence, preferring to deny the motion and let the jury render its verdict. The court may then grant a judgment n. o. v. in the event that the court then decides that a fact question was not presented by the evidence for the jury determination. One advantage of this procedure is to eliminate the need for a retrial in the event that the trial judge commits error in determining that the moving party is entitled to a directed verdict and that no fact question was presented. If the trial judge is overruled, there is a jury verdict which can be used as a basis for the entry of judgment."