WESTERN NATIONAL MUTUAL INSURANCE
COMPANY v. AUTO-OWNERS INSURANCE
COMPANY AND OTHERS.

220 N. W. 2d 362.

July 19, 1974—No. 44044.

*Mordaunt, Walstad, Cousineau & McGuire* and *Henry A. Cousineau, Jr.,* for appellants.

*Hall, McHaffie & Joyce* and *Richard T. McHaffie,* for respondent plaintiff.

*Hvass, Weisman, King & Allen* and *Charles T. Hvass,* for respondent defendants Allen.

Heard before Sheran, C. J., and Kelly, Todd, and MacLaughlin, JJ., and considered and decided by the court.

MacLAUGHLIN, JUSTICE.

Plaintiff, Western National Mutual Insurance Company, brought a declaratory judgment action in which it sought a de-

termination that defendant Auto-Owners Insurance Company erred in denying liability coverage to its insured, defendant Harry Hanson, and his subpermittee, Michele Ehlert, for claims arising out of an accident in July 1970. The trial court, sitting without a jury, found that the denial of coverage was improper and that Auto-Owners was bound to provide a defense and coverage to Harry Hanson and Michele Ehlert for such claims. We affirm.

At approximately 4 p. m. on Saturday, July 11, 1970, an automobile owned by Harry Hanson and driven by Michele Ehlert, age 15, struck a tree near the intersection of East 52nd Street and 18th Avenue South in Minneapolis. Michele's sister, Terryl, age 13, and a friend, Diana Allen, age 15, were riding as passengers and sustained personal injuries. At the time of the accident the car was insured under a policy of liability insurance issued by defendant Auto-Owners to defendant Harry Hanson.

The sequence of events leading up to the accident began when Gregory Hanson, age 17 at the time of the accident, received permission to use the family car for the day on Saturday, July 11, 1970. Greg first picked up a friend, Steve Wesner, and then proceeded to the Ehlert home. Greg had been dating Michele Ehlert for 3 or 4 months prior to the accident. When Greg and Steve arrived, Michele and Terryl Ehlert were home, and Diana Allen arrived shortly thereafter. The group decided to make some sandwiches, buy some beer, and go to the beach.

After purchasing three 6-packs of Colt .45 malt liquor, the group drove to a grassy area beside Lake Nokomis, just off Cedar Avenue in Minneapolis. They parked the car on Cedar Avenue and spread out two blankets on the grass near the water and proceeded to eat some of the sandwiches. They also began drinking some of the beer, although Greg testified that only he and Steve were drinking when the group first arrived at the lake. Greg said that sometime after he had consumed three cans of beer he and Michele decided to go to a nearby Dairy Queen. Greg stated that Michele consumed no beer until they returned from

the Dairy Queen, but Michele said that she had been drinking beer before they left. In any event, both Michele and Greg agreed that he was intoxicated from drinking the three beers, and as a result, Michele drove Greg's car to the Dairy Queen with Greg as a passenger and with his express permission. Michele was not a licensed driver at the time.

There is a substantial conflict in the evidence as to the events which occurred after Greg and Michele returned from the Dairy Queen. Greg testified that upon their return Michele gave the car keys back to him at his request and he put them in the pocket of his shorts. He said that later on while he was lying on a blanket, the keys were poking him in the leg, so he took them out of his pocket and laid them on the blanket. He testified that he did not have any further conversation with Michele regarding the car after he retook the keys at the time they returned from the Dairy Queen.

On the other hand, Michele testified that she kept control of the keys after they returned from the Dairy Queen. She said that when they returned to the lake she had no conversation with Greg concerning the keys, and she denied that Greg asked that the keys be returned to him. Michele said that she placed the keys on a pile of clothes a few paces from Greg's blanket.

Sometime after they returned from the Dairy Queen, Greg fell asleep on the blanket, and Michele was unable to wake him. While Greg was asleep, Michele asked Diana if she wanted to listen to the radio in Greg's car. Michele testified that she retrieved the keys from the pile of clothes and went to the car with Diana. Prior to this time, Terryl had become bored or tired and had gone to the car to lie down. Michele remembers going to the car with Diana and recalls that Terryl was in the car, but does not remember anything thereafter. Michele testified that she had not asked Greg for permission to take the car a second time and that she had had more to drink after returning from the Dairy Queen but did not recall how much.

None of the three girls, Michele, Terryl, or Diana, could recall

how the accident occurred, but it is clear that Michele drove the car into a tree at about 4 p. m. The police officer investigating the accident testified that he saw Greg at the scene of the accident, but did not know who he was until later at General Hospital when he learned that Greg was the son of the owner of the car. Greg testified that he was awakened by Steve, who told him about the accident. He said that he went to the scene, but did not identify himself to the police and said nothing about the car at that time. The officer said that Greg told him at the hospital that Michele had taken the car keys while he was asleep, that she had driven the car to the Dairy Queen earlier that day, and that she had also driven the car on a previous occasion. Both Greg and Michele testified that she had never driven the car prior to that day. The officer said it was apparent that both Greg and Michele had been drinking.

■ The principal issue is whether, under the facts of this case, the trial court erred in determining that Michele was driving the automobile at the time of the accident with the permission of Gregory Hanson and with the implied consent of Harry Hanson, the owner of the vehicle.[1] To reach a decision on this question, we must consider again, under the facts of this case, whether an express grant of permission by a minor permittee to a minor subpermittee to operate an automobile owned by the permittee's father gives the subpermittee implied permission to operate the same vehicle shortly thereafter on the same day.

The applicable section of the Safety Responsibility Act is Minn. St. 170.54, which provides:

"Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case

---

[1] In Taylor v. Allstate Ins. Co. 286 Minn. 449, 176 N. W. 2d 266 (1970), we held that the term "consent" in the Safety Responsibility Act is synonymous with the term "permission" as used in the customary omnibus clauses of automobile liability insurance policies.

of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

The primary purpose of this provision of the Safety Responsibility Act is "to make the owner of motor vehicles liable to those injured by their operation upon public streets or highways where no such liability would otherwise exist." (Italics omitted.) Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 409, 10 N. W. 2d 406, 415. We have liberally construed the statute to accomplish its purpose, particularly in cases involving minor permittees and subpermittees. Foster v. Bock, 229 Minn. 428, 39 N. W. 2d 862 (1949); Lange v. Potter, 270 Minn. 173, 132 N. W. 2d 734 (1965); Granley v. Crandall, 288 Minn. 310, 180 N. W. 2d 190 (1970); Hutchings v. Bourdages, 291 Minn. 211, 189 N. W. 2d 706 (1971).

In a progression of cases, we have held that liability may be found as against the parent owner of an automobile when a subpermittee is driving at the time of an accident (1) even though the parent has expressly admonished his permittee child not to allow anyone else to drive the automobile when it is in the child's possession, Lange v. Potter, *supra;* (2) even though the permittee child allows the minor subpermittee to use the automobile beyond the scope of the permittee's grant of permission, Granley v. Crandall, *supra;* and (3) even though the permittee child is not a passenger in the automobile at the time of the accident, Hutchings v. Bourdages, *supra.*

In Granley, we observed that parents must be aware of the realities of youthful behavior, including the universal proclivity of young people for joyriding and their inclination to permit friends to drive an automobile. We admonished that (288 Minn. 313, 180 N. W. 2d 192):

"* * * To sustain the burden of proving lack of consent will require a strong showing that the car was being used by the child without the parent's knowledge and contrary to his explicit instructions, or that the operator, other than the child, was driving

without the child's permission under conditions which approach the status of a conversion or a theft."

The trial court found that Michele had specific permission from Greg to drive the car at the time they traveled to the Dairy Queen and that Greg had not withdrawn or canceled that permission after they returned. Rule 52.01, Rules of Civil Procedure, provides that the findings of a trial court shall not be set aside unless clearly erroneous. When we view the evidence in this case, as we must, in the light most favorable to respondents, it is apparent that the findings of the trial court are not clearly erroneous. It is also clear that Greg's express grant of permission to Michele to drive the car and Michele's continued control over the keys thereafter cannot be construed to characterize Michele's conduct in later driving the car as approaching "the status of a conversion or a theft."

Defendants cite Anderson v. Hedges Motor Co. 282 Minn. 217, 164 N. W. 2d 364 (1969), to support their argument that the trial court misapplied the law in holding that, under these circumstances, the express consent given to Michele to drive the car earlier in the day gave rise to a grant of implied consent for her use of the car later during the same day. Defendants rely on the following language used in the Anderson case (282 Minn. 221, 164 N. W. 2d 367):

"This court has held that previous use of an automobile with express consent of the owner could not be construed as evidence of implied consent at a subsequent time so as to render the owner liable for the negligence of the driver under the Safety Responsibility Act."

We believe the facts in the Anderson case are clearly distinguishable from those in this case. In Anderson, the defendant, a used-automobile dealer, engaged James Anderson to do body work on various used cars owned by the defendant to prepare them for sale by the defendant. Anderson made the repairs in his own garage as a part-time occupation. Anderson would take

the cars from the defendant's car lot, repair them, and return them to the defendant when finished. On one occasion, several months prior to the date of the accident involved in the case, Anderson had used one of the defendant's cars for his personal use but only after receiving specific permission from the defendant to do so.

On the date of the accident, Anderson was in possession of a car owned by the defendant pursuant to Anderson's agreement to make repairs on the car. The accident occurred while Anderson was using the car for personal reasons without the defendant's knowledge or express consent. We held under those circumstances that the jury did not err in finding no implied consent on the part of the defendant for Anderson's use of the car. We distinguished the Anderson case in Granley v. Crandall, *supra,* and concluded that it "involved * * * a bailor-bailee relationship where the owner had no reason to anticipate the car would be diverted to unauthorized uses. Nor did the owner have the opportunity for supervision and control which can be expected of a parent." 288 Minn. 312, 180 N. W. 2d 192. Further, in Anderson, the express consent upon which the implied consent was said to be founded was given by the defendant several months before the accident after a specific request to use the automobile and in relation to an entirely different automobile.

We hold that the trial court did not err in concluding that Michele had implied consent to use the automobile at the time of the accident, and we affirm its conclusion that Harry Hanson is liable for damages arising out of his car's operation at the time of the accident and is entitled to coverage pursuant to the terms of his Auto-Owners liability insurance policy.

■ Defendants contend that the trial court erred in refusing to admit, as irrelevant, evidence concerning Michele's driving experience, training, and license status. Defendants argue that this evidence is relevant and material in determining whether Greg impliedly consented to Michele's driving at the time of the accident because, while he might have been willing to allow her

to drive while he was present in the car, he might not have consented to it at a later time when he was not riding as a passenger. While facts of this kind might well be material under some circumstances in determining consent, the trial court did not abuse its discretion in disallowing the evidence in this case, particularly when Greg had specifically permitted Michele to drive the car only a short time before the accident.

Affirmed.