The SHELBY MUTUAL INSURANCE COMPANY, Respondent,

v.

Bradley KLEMAN, Appellant, Robert Joseph Sobczak, Appellant.

Nos. 46617, 46618.

Supreme Court of Minnesota.

May 13, 1977.

232

Mansur & Mansur, Peter M. Mansur and Daniel B. O'Leary, St. Paul, for Kleman.

Donovan McCarthy Crassweller Larson Barnes & Magie and Robert H. Magie III, Duluth, for Sobczak.

Halverson Watters Bye & Downs and Anthony S. Downs, Duluth, for respondent.

Heard before KELLY, YETKA and SCOTT, JJ., and considered and decided by the court en banc.

KELLY, Justice.

These are appeals from a judgment of district court declaring that at the time an accident between a car and a motorcycle occurred, the car was being driven without the express or implied consent of the owner and that the owner of the car was not liable to the driver of the motorcycle. We affirm.

This is an action brought by the Shelby Mutual Insurance Company for a declaratory judgment determining the extent of coverage provided by its liability insurance policy. On the evening of June 25, 1973, an automobile owned by Rolf Sundby, the named insured, collided with a motorcycle driven by appellant Bradley Kleman. Appellant Robert Sobczak was driving the Sundby vehicle at the time of the accident and was accompanied by Rolf Sundby's 16-year-old son, Gary. The case was tried before the court without a jury, and the facts are largely uncontroverted.

Gary took the car the night of the accident without his father's express permission. Rolf Sundby was home but was asleep on a couch when Gary took the car keys from a nearby table. Gary testified that he had taken the car six or eight times

previously in May and June 1973, without securing his father's permission. On these occasions, he would take the car between 7:30 p.m. and 8:00 p.m. and return it to the garage after a 10-mile drive approximately 1½ hours later. Rolf Sundby was usually sleeping when Gary returned home, although once he apparently was awake. Gary testified that his father was not aware of his unauthorized trips in the car.

Gary's 21-year-old brother[1] witnessed Gary return once, but did not inform his father about Gary's use of the car because of his father's poor physical condition. During this period Rolf Sundby suffered from a kidney condition which required him to be hospitalized at times and to take medication that induced heavy slumber.[2] He did, however, drive the car occasionally during this period and refused Gary's offers to serve as his chauffeur on errands.

Gary, sometime earlier, had driven the car with his father accompanying him, although the youth had neither a driver's license nor an instruction permit. That occasion was the only time he had had his father's express permission to drive. Significantly, Gary's older brother had to obtain his father's permission before he could use the car. Rolf Sundby neither explicitly instructed Gary not to use the car, nor did he hide the car keys from Gary.

Minn.St. 170.54, which supplies a basis for Rolf Sundby's liability for the operation of his car on the night of the accident, provides:

"Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

The trial court found that Gary took the car without his father's express or implied consent. The primary issue to be resolved on this appeal is whether that finding is clearly erroneous. Rule 52.01, Rules of Civil Procedure. Since there is no evidence of express consent, the controversy centers on whether the circumstances indicate that Rolf Sundby impliedly consented to Gary's use of the car. If implied consent for Gary's use exists, then Rolf Sundby impliedly consented to Robert Sobczak's operation of the car at the time of the accident. *Granley v. Crandall*, 288 Minn. 310, 180 N.W.2d 190 (1970).

In *Granley v. Crandall, supra,* this court established the following standard for parental consent to a child's use of the parent's car:

" * * * To sustain the burden of proving lack of consent will require a strong showing that the car was being used by the child without the parent's knowledge and contrary to his explicit instructions * * *." 288 Minn. 313, 180 N.W.2d 192.

A strong showing is required because we liberally construe § 170.54, to effectuate its purpose of providing protection to members of the public injured by the operation of motor vehicles where liability would not otherwise exist. See, e. g., *Hutchings v. Bourdages*, 291 Minn. 211, 189 N.W.2d 706 (1971). We have consistently expanded liability in the past.[3] *State Farm Mutual*

---

1. Gary's mother, the only other member of the family, had died in 1970.

2. Rolf Sundby died from his condition on July 29, 1973.

3. The history of the expansion of liability is chronicled in *Hutchings v. Bourdages,* 291 Minn. 211, 189 N.W.2d 706 (1971). In *Lange v. Potter,* 270 Minn. 173, 132 N.W.2d 734 (1965), the court reversed a jury finding of lack of implied consent, holding as a matter of law that a father had impliedly consented to the use of his car by his daughter's friend, notwithstanding his standing instructions that she was not to permit anyone else to drive the vehicle. The daughter was present in the car at the time of the accident and the court found that it was then being used for a purpose (i. e., celebration of her seventeenth birthday) intended by both father and daughter. In *Granley v. Crandall,* 288 Minn. 310, 313, 180 N.W.2d 190, 192 (1970), the court eliminated the requirement of use of the car within the purpose intended by the parent. And in *Hutchings v. Bourdages, supra,* the court eliminated the requirement that the child need be present in the car. Accord, *Western Nat. Mut. Ins. Co. v. Auto-Owners Ins. Co.,* 300 Minn. 401, 220 N.W.2d 362

*Auto. Ins. Co. v. Dellwo,* 300 Minn. 409, 220 N.W.2d 367 (1974), indicates that parental liability is not absolute, however.[4]

■ Appellant Kleman in the instant case contends, first, that Rolf Sundby either had or should have had knowledge of Gary's previous journeys in the vehicle and, second, that Rolf Sundby should have instructed his son not to use the car and should have hidden the car keys from him. The trial court found that the evidence failed to sustain a showing that Rolf Sundby had or should have had knowledge of the unauthorized use of the car by Gary. Appellants contend that this finding is erroneous since Rolf Sundby was at home when Gary returned from his outings, and therefore should have been aware of Gary's previous uses of the car. Appellant Kleman also suggests that Rolf Sundby's prior express consent to Gary's driving is evidence of implied consent on the night in question.[5] Viewing the evidence, as we must, in the light most favorable to respondent, we cannot say that the trial court's finding is clearly erroneous. See, *State Farm Mutual Auto. Ins. Co. v. Dellwo, supra.* Gary's use

of the car did little to change the appearance or mileage of the vehicle. Moreover, Rolf Sundby's illness could reasonably be thought to diminish his awareness of Gary's activities. On the state of the record, we cannot say with "firm conviction that a mistake has been made." E. g., *State, by Head, v. Paulson,* 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971).

■ The trial court reasoned that because Rolf Sundby was justifiably without knowledge of Gary's unauthorized excursions in the car, it was unnecessary for him to explicitly caution Gary against such use or to hide the car keys. Relying on *Granley v. Crandall,* 288 Minn. 310, 180 N.W.2d 190 (1970), appellants contend, however, that Rolf Sundby's knowledge of Gary's ability to drive the car, gained from riding with Gary in the past, plus the proclivity of teenagers to "joyride," compelled him to take these precautions against Gary's unauthorized use of the vehicle. His failure to do so, appellants assert, meant he acquiesced in Gary's use of the vehicle.

We find that in light of the knowledge he possessed, Rolf Sundby took adequate pre-

(1974). These cases are not directly applicable to the instant action since in each the owner initially granted express permission to use the car.

**4.** In *State Farm Mutual Auto. Ins. Co. v. Dellwo,* 300 Minn. 409, 220 N.W.2d 367 (1974), an insurance company brought a similar declaratory judgment action, and this court sustained a directed verdict for plaintiff finding no implied consent. The father there bought a pickup truck, primarily for use on his 5-acre farm, and instructed his 15-year-old and 16-year-old sons in its use. He gave them permission to drive it only on the farm and only when he or his wife was at home. His sons violated these restrictions and when their father found out, he forbade them to use the truck. Nevertheless, they drove it again, whereupon they were reprimanded and again were ordered not to drive the truck. In addition, the truck keys were effectively hidden from them. The sons, however, learned they could start the truck first with a knife and later with a screwdriver. The father did not drive or examine the truck after his sons' first escapade on public roadways came to his attention. Had he done so within 2 weeks of the accident in question, he would have noticed a hole in the dashboard where the ignition cylinder should have been. This court found: "[The parents] took every reasonable

precaution short of disposing of the truck to prevent its operation by [their sons]. It is clear that the truck was continually being used contrary to [their] explicit instructions. Further, the record does not disclose that the [parents] knew, or should have known, that the boys were continuing to operate the truck in spite of [their] instructions, admonitions, and precautions." 300 Minn. 413, 220 N.W.2d 370.

**5.** The trial court rejected this suggestion, citing *Anderson v. Hedges Motor Co.,* 282 Minn. 217, 164 N.W.2d 364 (1969). In *Western Nat. Mut. Ins. Co. v. Auto-Owners Ins. Co.,* 300 Minn. 401, 407, 220 N.W.2d 362, 366 (1974), we dismissed a similar argument based on the Anderson case in upholding a finding of implied consent. There, a son had given express consent to a friend to drive his father's car. Later that day, the friend drove the car without the son's express permission and was involved in an accident. The *Auto-Owners Ins. Co.* case may be distinguished from the instant action because of the greater lapse of time here involved between the operation of the car with express consent and the accident in question. Cf. *Kayser v. Jungbauer,* 217 Minn. 140, 143, 14 N.W.2d 337, 339 (1944).

cautions to prevent Gary from driving. Since Gary's older brother, who was a licensed driver, had to obtain his father's permission before taking the car, Gary must have been aware that he also was not to take the car without securing permission. Rolf Sundby had thus implicitly given Gary instructions not to drive. In *Granley v. Crandall, supra,* in which a mother had given her daughter express permission to use the car, the test appears to require explicit instructions. Thus, the test construed in light of the circumstances of that case and subsequent cases[6] does not reach the issue of whether explicit instructions are required of a parent who has not initially authorized use of his car. Since Rolf Sundby justifiably was without knowledge of Gary's unauthorized use of the car, his implicit instructions were sufficient.

Furthermore, we do not require that Rolf Sundby should have hidden the car keys from Gary. Although the parents in *State Farm Mutual Auto. Ins. Co. v. Dellwo, supra,* took this precaution, and it was a factor in this court's affirmance of a directed verdict in favor of their insurer, concealment of car keys is not a *prerequisite* to a finding of nonliability. In *Dellwo,* the parents hid the keys after their children had driven the pickup truck contrary to their explicit instructions. Because Rolf Sundby had no reason to believe Gary was driving the car, the fact that he did not take steps to. withhold the car keys from Gary does not entail his liability. In the circumstances of this case, we cannot say that the trial court's finding of lack of implied consent was clearly erroneous.

■ Appellant Kleman also raises the question of the propriety of dual representation by counsel for respondent insurance company. Besides respondent, the law firm represents Gary Sundby.[7] Appellant Kleman moved that the court below enjoin the firm from representing Gary in any manner or in any proceedings regarding the automobile accident in question, because of an alleged conflict of interest. It is suggested that if the insurance company prevailed in this action, Gary would be left without insurance coverage and would be responsible for a judgment rendered against him. At a hearing on the motion, however, counsel for the insurance company assured the court, as it did this court at oral argument, that the company would provide Gary insurance coverage under the policy. At the suggestion of appellant's counsel, Gary had conferred with an independent attorney about the need for separate counsel and was advised that it was unnecessary in these circumstances. The court asked Gary if he consented to his present representation in light of these developments, and, upon his affirmative answer, denied appellant's motion.

Although this court has recognized that an attorney representing both an insurance company and an insured may at times be placed "in an exceedingly awkward position,"[8] counsel for respondent and Gary does not seem so placed in this action. Since respondent insurance company has stated that it will afford Gary coverage, no apparent conflict in representation exists. Moreover, Gary has consented to the representation with knowledge of the circumstances. Cf. DR 5–105(C), Code of Professional Responsibility.

Affirmed.

---

6. See footnote 3, *supra.*

7. As a member of Rolf Sundby's household, Gary was an insured under his father's policy.

8. *Crum v. Anchor Casualty Co.,* 264 Minn. 378, 391, 119 N.W.2d 703, 711 (1963). Accord, *Newcomb v. Meiss,* 263 Minn. 315, 116 N.W.2d 593 (1962).