SAFECO INSURANCE
COMPANIES, Respondent,

v.

Joseph Gonzales DIAZ, et al.,
Defendants,

David Joseph Diaz, Respondent,

Marie K. Ortega, Appellant.

No. C3–85–2229.

Court of Appeals of Minnesota.

April 22, 1986.

Review Denied June 30, 1986.

Marie A. Darst, Jardine, Logan & O'Brien, St. Paul, for Safeco Ins. Companies.

Thomas O. Albers, Sandra Fjelstad, Bloomington, for David Joseph Diaz.

James J. Boyd, St. Paul, for Marie K. Ortega.

Considered and decided by CRIPPEN, P.J., and SEDGWICK and WOZNIAK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Appellant Marie Ortega was struck by an automobile driven by defendant Joseph Diaz and owned by respondent David Diaz. Ortega commenced a personal injury action against both Joseph and David Diaz. At the time of the accident, Joseph Diaz was insured by respondent Safeco Insurance Companies (Safeco). Safeco brought this

declaratory judgment action contending it did not have to afford coverage. The trial court granted summary judgment in favor of both Safeco and David Diaz and against Ortega. Ortega appeals. We reverse.

## FACTS

The factual bases for the trial court's decision were excerpts from depositions of Joseph and David Diaz included with Safeco's motion for summary judgment.

Joseph and David Diaz are brothers. On the weekend of the accident, Joseph was staying at David's house. David left his car keys on the kitchen counter and "forgot until I was about 10 miles out of town that I didn't put the keys away." David contends that Joseph was driving his car without his permission when he hit Ortega.

Joseph had keys to David's house, had used his car before, and knew he was not to use the car without permission. Joseph said David "was out of town that weekend and the keys were left there and I took the keys to the car." Joseph did not ask for permission to use David's car that weekend because "he wasn't there when I took the car."

I had my own car at the time. And he probably would have asked me why I wanted to use it since I had my own car. So I couldn't say yes or no if he would have let me use it.

Joseph did not drive his own car because "I just wanted to drive his car."

David knew Joseph had taken his car at least twice without permission. Once Joseph used his house key to get into David's house at night and get the car keys. The next morning, David discovered the car was missing and was about to report it as stolen when Joseph returned.

David began to hide the keys so Joseph could not use the car and told Joseph "on a couple occasions" that he was not allowed to use the car without permission. Joseph subsequently used David's car a number of times with his permission. Joseph did not use the car for "three or four months" before the accident.

Safeco's automobile insurance policy with Joseph Diaz included the following provisions:

**PART A—LIABILITY COVERAGE**

**INSURING AGREEMENT** We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident.

\*　　\*　　\*　　\*　　\*　　\*

**EXCLUSIONS** A. We do not provide Liability Coverage for any person:

\*　　\*　　\*　　\*　　\*　　\*

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

In a memorandum accompanying the order for summary judgment, the trial court discussed the application of *Milbank Mutual Insurance Co. v. United States Fidelity and Guaranty Co.*, 332 N.W.2d 160 (Minn. 1983):

There was *no initial* permission granted by David Diaz to Joseph Diaz to operate the former's vehicle. The evidence is conclusive that Joseph's use of David's car, without first securing express permission, was wholly unauthorized. Thus, without permission as to the use of the automobile, both movants are relieved of legal responsibility to Marie K. Ortega. The last such permission granted was some three months previous to the evening in question when Joseph collided with Marie K. Ortega causing injury to her. Thus, the *Milbank* doctrine simply does not apply.

On appeal, respondents moved to strike two exhibits, "Exhibits A and B," which were not before the trial court when the summary judgment motion was considered.

## ISSUES

1. Are Exhibits A and B part of the record on appeal?

2. Did the trial court err in granting summary judgment on the ground there was no genuine issue of material fact as to

whether defendant had permission to operate a vehicle?

3. Is an insurance policy exclusion that denies liability coverage to any person who uses a vehicle "without a reasonable belief that that person is entitled to do so" void as against public policy when applied against the named insured?

## ANALYSIS

### I.

An appellate court may not base its decision on matters outside the record on appeal, and matters not produced and received in evidence below may not be considered. *Plowman v. Copeland, Buhl & Co.,* 261 N.W.2d 581, 583 (Minn.1977). The appellate record is limited to "the papers filed in the trial court, the exhibits, and the transcript * * *." Minn.R.Civ.App.P. 110.-01.

■ Exhibit A is an affidavit of Joseph Diaz, signed after the order for summary judgment was issued. Exhibit B is an undated confession of judgment by Joseph Diaz in favor of Marie Ortega in her separate personal injury action. Neither document is part of the record on appeal. Minn.R.Civ.App.P. 110.01. Respondents' motions to strike these materials and "all references thereto" are accordingly granted.

### II.

On review of a summary judgment award, an appellate court must determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. All doubts and factual inferences must be resolved in favor of the nonmoving party.

Here the potential liability faced by respondents was of two types. David Diaz, the owner of the car, might have been vicariously liable under Minn.Stat. § 170.-54:

> Whenever any motor vehicle shall be operated within this state, by any person other than the owner, *with the consent of the owner, express or implied,* the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof.

Minn.Stat. § 170.54 (1984) (emphasis added). On the other hand, respondent Safeco faced possible liability under its insurance policy with Joseph Diaz. That policy excluded coverage for "any person using a vehicle without a reasonable belief that the person is entitled to do so."

The trial court apparently construed the policy language to simply mean "without permission." The Minnesota Supreme Court has said that "consent" under Minn. Stat. § 170.54 has the same meaning as "permission" as used "in customary omnibus clauses." *Taylor v. Allstate Insurance Co.,* 286 Minn. 449, 454–55, 176 N.W.2d 266, 270 (1970).

The trial court ordered summary judgment for respondents Safeco and David Diaz based on its finding that the evidence "is conclusive that Joseph's use of David's car, without first securing *express permission,* was wholly unauthorized." (Emphasis added). The court concluded that "without permission" the respondents were "relieved of legal responsibility."

Minnesota courts have increasingly focused on the victim of an automobile accident rather than on the owner or driver. *See Milbank Mutual Insurance Co. v. United States Fidelity and Guaranty Co.,* 332 N.W.2d 160, 165–66 (Minn.1983). The doctrine of "implied consent" has evolved to expand the scope of vicarious liability under Minn.Stat. § 170.54. "Implied consent" means that

> under some factual situations permission may be found even though not expressly granted. The strongest evidence of implied permission would be a series of prior uses without express permission and yet without objection by the owner.

*Stewart v. Anderson,* 310 Minn. 495, 498, 246 N.W.2d 576, 578 (1976).

In *Beebe v. Kleidon,* 242 Minn. 521, 65 N.W.2d 614 (1954), a 15 year old said he found the keys to his grandfather's car

hidden under a mattress. There was evidence the grandson had his own set of keys and had driven the car previously. The grandson said at an interview that he did not usually obtain permission before taking the car; at trial he denied he ever drove without express permission. The grandfather did not realize at the time that his grandson had taken the car. *Id.* at 523–24, 65 N.W.2d at 616. The Minnesota Supreme Court upheld the jury's finding of implied consent, stating:

> the existence or nonexistence of implied consent was a jury question. Implied consent may be drawn from all the facts and circumstance of the case.

Id. at 525, 65 N.W.2d at 617; *see also Anderson v. Hedges Motor Co.*, 282 Minn. 217, 220, 164 N.W.2d 364, 367 (1969).

In *Stewart* a family friend had previously used a car with express permission. There was no evidence the owners ever objected to his use or "if express permission had been requested it would have been denied." A trial court's finding of implied consent was upheld on appeal. 310 Minn. at 497–98, 246 N.W.2d at 577–78.

In a more recent declaratory judgment action, *State Farm Mutual Automobile Insurance Co. v. Dellwo*, 300 Minn. 409, 220 N.W.2d 367 (1974), a father took the keys to a truck away from his two sons and severely reprimanded them. They managed to drive the truck anyway by removing the ignition lock. On appeal, the supreme court stated:

> While it probably would have been the better procedural practice in this case to submit the question to the jury, we hold that the trial court did not err in directing a verdict. * * * Viewing the entire evidence most favorably to the appellant, we have concluded that it would have been the manifest duty of the trial court to set aside a jury verdict for the appellant.

Id. at 413, 220 N.W.2d at 370 (footnote omitted).

A trial court also found a lack of implied consent in a declaratory judgment context in *Shelby Mutual Insurance Co. v. Kleman*, 255 N.W.2d 231 (Minn.1977). In *Kleman* a son took a car "six or eight times" while his father slept; the last time he collided with a motorcycle. The son had driven the car once with his father's express consent. The father did not hide the car keys and never told his son not to use the car. *Id.* at 232–33.

On appeal, the injured motorcyclist contended the father should have known of the son's use of the car, told him not to use it, and hidden the keys. The supreme court disagreed:

> [C]oncealment of car keys is not a *prerequisite* to a finding of nonliability. *In* Dellwo, *the parents hid the keys after their children had driven the pickup truck contrary to their explicit instructions. Because Rolf Sundby had no reason to believe Gary was driving the car, the fact that he did not take steps to withhold the car keys from Gary does not entail his liability.*

Id. at 235 (emphasis original).

Here David Diaz knew his brother Joseph had taken his car at least twice without permission. David told him not to use the car without asking and began to hide the car keys. David went out of town for the weekend and let Joseph stay at his house. When David was about ten miles away, he realized he had left the car keys on the kitchen counter.

This case is distinguishable from *Kleman* because David was aware of Joseph's prior unauthorized uses. *See* 255 N.W.2d at 235. The fact that David left the keys on the kitchen counter also differentiates this case from *Dellwo*, where the owner took more responsible measures to prevent any further use. *See* 300 Minn. at 411, 220 N.W.2d at 369.

█ We agree with appellant that whether Joseph Diaz had implied consent to use the car is a genuine issue of fact. *Beebe*, 242 Minn. at 525, 65 N.W.2d at 617. A jury could infer that David Diaz either gave Joseph implied permission to use his car or knew Joseph might use the car and took inadequate precautions to prevent

such use. Appellant is entitled to have this factual inference resolved in her favor. *McCormick v. Custom Pools, Inc.*, 376 N.W.2d 471, 475 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985). There being an issue of fact, the trial court's award of summary judgment cannot stand.

## III

■ The trial court granted summary judgment to Safeco based on a finding that "without permission as to the use of the automobile" Safeco was not legally obligated under its insurance policy with Joseph Diaz. We find that this exclusionary clause which denies liability coverage to the named insured conflicts with the purposes of the Minnesota No-Fault Act, Minn. Stat. §§ 65B.41–.71 (1984 & Supp.1985), and is void.

The No-Fault Act was adopted to "relieve the severe economic distress of uncompensated victims of automobile accidents * * *." Minn.Stat. § 65B.42(1) (1984). In Minnesota, every person injured in an automobile accident has a right to basic economic loss benefits. Minn.Stat. § 65B.46, subd. 1 (1984). The Minnesota Supreme Court has shown no hesitancy in striking exclusionary clauses that are inconsistent with the purposes of the No-Fault Act. *See Rosenberger v. American Family Mutual Insurance Co.*, 309 N.W.2d 305 (Minn.1981); *Anderson v. Illinois Farmers Insurance Co.*, 269 N.W.2d 702 (Minn.1978).

The legislature has provided that even a converter of a motor vehicle may recover basic economic loss benefits:

A person who converts a motor vehicle is disqualified from basic or optional economic loss benefits, including benefits otherwise due him as a survivor, from any source *other than an insurance contract under which the converter is an insured,* for injuries arising from maintenance or use of the converted vehicle. * * * For the purpose of this section, a person is not a converter if he uses the motor vehicle in the good faith belief that he is legally entitled to do so. Minn.Stat. § 65B.58 (1984) (emphasis added). The statute shows a clear legislative intent that one who converts a motor vehicle is not thereby removed from the protection of the No-Fault Act.

If Joseph was a "converter" and had also been injured in the accident, he could still look to his own insurance to recover basic economic loss benefits. Minn.Stat. § 65B.58 (1984). But under those same circumstances, the plain meaning of Safeco's policy exclusion would deny liability coverage for the benefit of Ortega. The likely result, an uncompensated or undercompensated injured person, is repugnant to the purpose of the No-Fault Act.

Even more disturbing is that such an exclusion would leave an innocent third party without recourse against either the owner of a vehicle or the driver. Minnesota has a clear policy of providing insurance coverage to the maximum extent possible; losses should be spread widely through insurance coverage, not rest on one unfortunate individual. *Progressive Casualty Insurance Co. v. Kraayenbrink,* 370 N.W.2d 455, 461 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 19, 1985).

Joseph was a covered person by definition under his policy with Safeco. He paid a premium for this coverage. It is difficult to see how Safeco's liability is any different when its own insured drives his brother's car, with or without the brother's permission. Although he is not personally collecting any benefits from his policy, Joseph Diaz is nevertheless entitled to the liability insurance coverage for which he has paid a premium. *See Sobania v. Integrity Mutual Insurance Co.,* 349 N.W.2d 345, 347 (Minn.Ct.App.1984), *aff'd* 371 N.W.2d 197 (1985).

We therefore hold that this policy exclusion is contrary to the purposes of the Minnesota No-Fault Act and void.

## DECISION

1. Respondent's motion to strike non-record portions of appellant's brief is granted.

2. The trial court erred in granting summary judgment to respondents where facts could lead to inference that defendant driver had implied consent to use respondent's automobile.

3. An exclusion in an automobile insurance policy was void because it was repugnant to the purpose of the Minnesota No-Fault Act.

Reversed and remanded.