STATE of Minnesota, Respondent,

v.

Hollis John LARSON, Appellant.

No. C2–93–1991.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Review Denied Oct. 14, 1994.

Hubert H. Humphrey III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul, Gary A. Fridell, Goodhue Co. Atty., Red Wing, for respondent.

John M. Stuart, State Public Defender, Cathryn Young Middlebrook, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and RANDALL and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant challenges his conviction of criminal sexual conduct in the first and second degrees on the bases of improper venue, insufficient evidence and an improper evidentiary ruling. In his pro se brief, appellant also contends that certain convictions for lesser-included offenses must be vacated. Venue was proper and the evidence sufficient to support appellant's conviction. We affirm appellant's convictions of counts I and IV, reverse the convictions of counts II and III, and remand.

## FACTS

Appellant Hollis John Larson is the maternal uncle of M.M., the victim in this case. M.M. accused appellant of having sexual intercourse with her on two occasions in October and November 1990. At the time of the abuse, M.M. was 15 years old and lived with her parents and three sisters in Goodhue County, Minnesota.

The first incident occurred at her aunt's home and resort in Renville County. This aunt, sister to both appellant and M.M.'s mother, had a family gathering at her home; appellant and M.M.'s family attended. M.M. stayed overnight while her mother stayed at the home of another of her sisters. During the early morning hours, while the rest of the family slept, M.M. sat talking with appellant in the living room; M.M. was confiding in appellant about her personal problems. After appellant offered M.M. a beer, he began kissing her and fondling her breasts beneath her clothing. He removed her clothing and engaged in sexual intercourse with her. M.M. recalls struggling to push appellant away, but she does not remember if that occurred before, during, or after the assault. Shortly after intercourse, appellant went upstairs saying something to the effect of, "If Kay [the aunt] comes home, we are dead." M.M. cried and felt numb; she said nothing to her family.

The second incident occurred over Thanksgiving weekend 1990 when appellant was a guest at M.M.'s family's home. M.M.'s parents left to do farm chores early in the morning, leaving appellant alone with their three daughters. Appellant came to M.M. while she was in her bedroom and demanded sex with her. M.M. said no. Although M.M. could not remember appellant's exact phraseology, she understood what he said as a threat "that if I didn't have sex with him, he would have sex with my little sisters." At that time, her sisters were between the ages of four and seven. At trial, M.M. explained

that she agreed to submit to appellant because:

> it was me or them, you know. * * * I mean, they were little kids, you know. It just seemed the lesser of the two evils.

After intercourse, appellant told M.M. to perform fellatio, but she refused.

M.M. said nothing of this incident to anyone until she saw her cousin S.L. visibly upset after speaking with appellant at a family Christmas party in 1990. In a very short conversation, the girls admitted to each other that they both had been sexually involved with appellant, but exchanged no details. M.M. and S.L. did not discuss the assaults again until S.L. went to the police.[1]

M.M. filed a complaint with the police in November 1991. The Goodhue County Attorney charged appellant with three counts of first degree criminal sexual assault and one count of second degree criminal sexual assault. Appellant waived his right to counsel and a jury trial. The trial court found appellant guilty as charged. Given that appellant was already serving time for the crimes against S.L., the trial court sentenced him on count I to 86 months imprisonment consecutive to his Anoka County sentence, and on count IV to 158 months concurrent with the Anoka County sentence.

## ISSUES

1. Was Goodhue County the appropriate venue for trial of the charges against appellant?

2. Did the trial court abuse its discretion by admitting *Spreigl* evidence against appellant?

3. Was the evidence sufficient to support appellant's conviction?

4. Does appellant raise any issues in his pro se brief entitling him to relief on appeal?

5. Are the partial transcripts in appellant's appendix properly a part of the appellate record and entitled to review?

---

1. Appellant was charged with two counts of first degree criminal sexual conduct and one count of second degree criminal sexual conduct against S.L. M.M. served as a *Spreigl* witness for the prosecution in S.L.'s case. After trial, the jury found appellant guilty of the two first degree charges and acquitted him of the second degree charge. This court affirmed the conviction. *See State v. Larson,* No. C8–93–179, 1993 WL 412998 (Minn.App. Oct. 19, 1993), *pet. for rev. denied* (Minn. Dec. 14, 1993).

## ANALYSIS

### 1. Venue

■ Appellant was tried and convicted in Goodhue County Court for having committed crimes in Goodhue and Renville Counties. Appellant first argues that application of the venue statute to his case is unconstitutional. In his pretrial motion, appellant's stand-by counsel argued that, under Minn.Stat. § 627.15 (1990), the charges for the alleged offenses that occurred in Renville County ought to have been dismissed and prosecuted in their proper venue of Renville County; counsel did not challenge the constitutionality of that statute on its face or as applied to this case. Thus, appellant's constitutional challenge is not properly before this court on appeal. *See State v. Sorenson*, 441 N.W.2d 455, 457 (Minn.1989) ("We will not decide issues which are not first addressed by the trial court and are raised for the first time on appeal even if the issues involve questions regarding criminal procedure").[2]

■ Appellant alleges that venue was improperly laid in Goodhue County for the offenses that had occurred in Renville County. The venue statute provides:

A criminal action arising out of an incident of alleged child abuse may be prosecuted either in the county where the alleged abuse occurred *or the county where the child is found.*

Minn.Stat. § 627.15 (emphasis added). Appellant contends that a child may not be "found" in her county of residence. We disagree.

The plain language of section 627.15 does not support such a limited interpretation. The statute contains no terms limiting how or where a child may be "found." Indeed, the supreme court has demonstrated a willingness to construe the venue statute liberally in child abuse cases and allow prosecution in a county other than where the crimes occurred. *See State v. Krejci*, 458 N.W.2d 407, 411 (Minn.1990); *see also State v. Norton*, 328 N.W.2d 142, 144 n. 1 (Minn.1982) (in "doubtful cases" in which the child victim has no idea in which county abuse occurred, the prosecutor may rely on section 627.15, in accord with Minn.R.Crim.P. 24.02, subd. 3, and charge a defendant where the child is found). Furthermore, even if the plain language of section 627.15 were not clear on the issue, legislative history reveals the drafters' intent to include the child's county of residence as a place the child may be "found." [3]

Given this legal authority, the Goodhue trial court properly accepted venue for the Renville charges as well as the Goodhue charges because M.M. was "found" in Goodhue County, her county of residence.

■ Appellant argues that section 627.15 does not apply to this case because "child abuse" refers only to an ongoing course of abuse of a victim who is unaware of its surroundings, as involved in *Krejci*, 458 N.W.2d at 411. We do not read the venue statute so narrowly. The plain language of Minn.Stat. § 627.15 refers to "*an incident* of alleged child abuse*," meaning one incident is sufficient for the statute to apply; the statute does not set forth a prerequisite number of incidents. *Id.* (emphasis added). Nor does *Krejci* limit application of the venue statute *only* to cases involving victims who were unaware of where the abuse occurred. The supreme court acknowledged that the special problems involved in child abuse cases necessitated the special venue statute and, "to the extent that the statute may on occasion be susceptible to broader application," held that

---

2. Even if appellant had preserved the objection, however, his argument is without merit. The Minnesota Supreme Court has found section 627.15 constitutional as applied to bringing a defendant to trial in the county where a child was "found" in the hospital for treatment of injuries from alleged abuse, even though that offense occurred in another county. *State v. Krejci*, 458 N.W.2d 407, 411 (Minn.1990). In an analogous situation, the Minnesota Supreme Court held constitutional the theft statute that allowed a person who had committed two or more offenses in two or more counties to be prosecuted in any of those counties for all of the offenses under the statute. *State v. Hanson*, 285 N.W.2d 483, 485–86 (Minn.1979).

3. *See* discussion on relation of residence to where child is "found," and comment of Senator Davies: "You just find them where their residence is * * * if that's where you want to prosecute, you find them there." *Hearing on S.F. No. 1291 Before the Senate Judiciary Committee, Criminal Law Division* (Apr. 19, 1977).

section 627.15 comports with the Minnesota Constitution. *Krejci,* 458 N.W.2d at 411–12.

■ Appellant also claims that the venue statute does not apply because the offense here was not "child abuse." We disagree. Minn.Stat.Ann. § 627.15 (West 1983) contains a cross-reference to the reporting of maltreatment of minors statute which defines sexual abuse to include

the subjection of a child by a person responsible for the child's care, or by a person in a position of authority, as defined in section 609.341, subd. 10, to any act which constitutes a violation of section 609.342, 609.343, 609.344 or 609.345.

Minn.Stat. § 626.556, subd. 2(a) (1990). The definition of "position of authority"

includes but is not limited to a person who is a parent or acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities to a child, or a person who is charged with any duty or responsibility for the health, welfare, or supervision of a child, either independently or through another, no matter how brief, at the time of the act.

Minn.Stat. § 609.341, subd. 10 (1990). This definition does not contain an exclusive list of persons in a position of authority. *Id.* The record shows that the trial court did not err in applying section 627.15 to appellant because he was in a position of authority over M.M.: he was ten years older than M.M.; she described him as her "favorite uncle"; and he acted as her confidante. The child abuse that occurred here falls under the provisions of the venue statute.

## 2. *Spreigl Evidence*

■ Appellant contends the trial court abused its discretion when it admitted *Spreigl* evidence of appellant's conviction for abusing S.L. We disagree.

Appellant did not object at trial to the admission of the *Spreigl* evidence or the certified copy of conviction. Failure to object to *Spreigl* evidence at trial "constitutes a waiver of the right to claim this as error on appeal." *State v. Feehan,* 412 N.W.2d 309, 314 (Minn. App.1987), *pet. for rev. denied* (Minn. Nov. 12, 1987). Even though appellant appeared pro se at trial, he had a stand-by public defender available at counsel table. When the court asked appellant specifically if he wished to be heard on this issue, he declined and failed to request stand-by counsel to object on his behalf. By failing to object at trial, appellant waived the right to allege this error on appeal. *Id.*

## 3. Sufficiency of Evidence

■ Appellant argues the evidence at trial was insufficient to support his convictions. After a thorough review of the record, we cannot agree. When reviewing a claim of insufficient evidence, this court must view the evidence in a light most favorable to the prosecution and must

determine whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged.

*State v. Ulvinen,* 313 N.W.2d 425, 428 (Minn. 1981). This standard applies to verdicts rendered by a jury or by a trial court. *State v. Ibarra,* 355 N.W.2d 125, 130 (Minn.1984).

■ The trial court found appellant guilty of three counts of first degree criminal sexual conduct and one count of second degree criminal sexual conduct. *See* Minn.Stat. §§ 609.342, subd. 1(g), (h)(i); 609.343, subd. 1(g) (1990). The trial record supports that verdict. M.M. testified in detail about how appellant fondled her, removed her clothing and engaged in sexual intercourse with her at her aunt's home in October. She also testified in detail about the second incident over Thanksgiving weekend in which appellant led M.M. to believe that her younger sisters would be in danger of sexual assault unless she succumbed to him.

In addition to M.M.'s testimony, the prosecutor presented S.L.'s *Spreigl* testimony to show appellant's pattern of conduct with his teenage nieces. Like M.M., S.L. was assaulted the first time at her aunt's home and resort in Renville County. After appellant and S.L. had been talking for awhile, they visited neighbors, and appellant began stroking S.L.'s legs. When they returned to the aunt's home late at night, appellant brought S.L. in through the basement, where he had

a bed. He asked S.L. for a backrub, and, in the course of it, he rolled over, removed S.L.'s clothing and penetrated her vagina digitally and then with his penis. Although S.L. tried resisting him, her efforts were futile because appellant was holding down her arms and legs on the bed. After the assault, appellant told S.L., "If your parents find out, we are both going to be in trouble, and your parents would kill me and you." S.L. did not tell anyone of this incident. Appellant engaged in sexual intercourse with S.L. approximately 15 times during the summer of 1988 when S.L. visited her aunt. As with M.M., appellant also assaulted S.L. when he was a guest in her family's home, after her family had gone to sleep. This testimony lent credence to M.M.'s allegations and showed appellant's common scheme for abusing his nieces. *See State v. Wermerskirchen,* 497 N.W.2d 235, 242 (Minn.1993) (*Spreigl* evidence admissible to disprove defense of fabrication and to show a "pattern of behavior involving the opportunistic sexual exploitation of young girls within the family context").

Appellant contends that certain inconsistencies between the girls' testimony at both trials dilute their credibility and render their allegations inconclusive. "Inconsistencies or conflicts between one state witness and another do not necessarily constitute false testimony or a basis for reversal." *State v. Daniels,* 361 N.W.2d 819, 826 (Minn.1985). The trial court had the opportunity to observe the witnesses on direct and cross-examination and weigh their credibility and veracity in light of the testimonial challenges that appellant raised during cross-examination. Apparently, the trial court was not convinced by the minor inconsistencies in testimony, a determination to which we must defer. *Walker v. State,* 394 N.W.2d 192, 196 (Minn.App. 1986) ("[j]udging a witness' credibility is a duty for the trier of fact and we must defer to the [trier of fact's] judgment in this matter"), *pet. for rev. denied* (Minn. Nov. 26, 1986).

Based upon this evidence, the trial court reasonably could have concluded that appellant was guilty as charged. This record contains sufficient evidence to support appellant's conviction.

## 4. Pro Se Brief

Appellant raises several issues in his pro se brief. We will address each in turn.

### a. *Perjury*

■ Appellant contends he was denied due process of law when the state knowingly used perjured testimony in its case against him. He contends that S.L. perjured herself on the stand when offering *Spreigl* evidence because some of her remarks were inconsistent with her testimony in her own trial.

Inconsistencies "do not necessarily constitute false testimony or a basis for reversal." *Daniels,* 361 N.W.2d at 826. Appellant raised these inconsistencies during cross-examination at trial. The court had the opportunity to observe S.L. as she responded to the questions. The trial court, as finder of fact, had the duty of weighing the credibility of the witness and her testimony. *See Walker,* 394 N.W.2d at 196. The record does not contain any evidence that suggests that S.L. gave false testimony or that the state knew or should have known that she was going to give false testimony at trial. The record does not support appellant's contention that S.L. perjured herself.

### b. *Trial Court Bias*

■ Appellant contends that he was denied a fair trial because the trial judge was biased against him. Appellant states that the bias "is exemplified by the judge's treatment of appellant during all phases of his trial." Although appellant presents legal authority to support his argument, he has failed to present any evidence to support his allegation. The transcript does contain dialogue between the trial court and appellant that could be characterized as tense and at times mutually impatient, but it would be a far stretch to conclude from those brief exchanges that the trial court was biased against appellant. With all due respect to appellant's perception of how he was treated at trial, we can discern no evidence in the transcripts to support his allegation of bias.

### c. *Lesser-included Offenses*

Appellant argues that this court must vacate his convictions for counts II and III because they were lesser-included offenses of counts I and IV for which he was sentenced. We agree.

 Minnesota law prohibits multiple convictions of one offense based upon the same conduct. *State v. Eppler,* 362 N.W.2d 315, 318 (Minn.1985). A defendant "may be convicted of either the crime charged or an included offense, but not both." Minn.Stat. § 609.04, subd. 1 (1990). A defendant may not be convicted of criminal sexual conduct in the first degree and second degree arising out of the same acts with the same victim; the second degree convictions must be vacated. *State v. Cermak,* 350 N.W.2d 328, 334 (Minn.1984) (applying Minn.Stat. § 609.04); *see also State v. Hesse,* 281 N.W.2d 491, 493 (Minn.1979) (fondling was "incidental to the act of sexual penetration and not the kind of other sexual conduct which justifies a separate conviction in addition to that for the sexual intercourse"). If a person's conduct constitutes more than one offense, he may be punished for only one of the offenses. Minn. Stat. § 609.035 (1990). In determining whether two or more intentional crimes constituted one course of conduct, the court must consider the time and place of the crimes, and whether the "conduct involved was motivated by an effort to obtain but one criminal objective." *State v. Gibson,* 478 N.W.2d 496, 497 (Minn.1991).

Appellant was convicted of the following offenses:

Count I: *First degree criminal sexual conduct:* significant relationship between the actor and the victim; victim under 16 years of age; *sexual penetration;* committed in Renville County.

Count II: *Second degree criminal sexual conduct:* significant relationship between the actor and the victim; victim under 16 years of age; *sexual contact;* committed in Renville County.

Count III: *First degree criminal sexual conduct:* significant relationship between the actor and the victim; victim under 16 years of age; *sexual penetration;* committed in Goodhue County.

Count IV: *First degree criminal sexual conduct:* significant relationship between the actor and the victim; victim under 16 years of age; *sexual penetration; use of force or coercion;* committed in Goodhue County.

*See* Minn.Stat. §§ 609.342, subd. 1(g), (h)(i); 609.343, subd. 1(g).

 Although count II involves sexual contact, an element that could be distinct from the element of sexual penetration in count I in certain circumstances, here the facts establish that fondling and sexual penetration occurred at relatively the same time, in the same place, and with appellant's intent to abuse his niece. *See Gibson,* 478 N.W.2d at 497. Thus, counts I and II arose from the same course of conduct; appellant's conviction of count II must be vacated. *See Hesse,* 281 N.W.2d at 493.

The state concedes that count III must be vacated as a lesser-included offense of count IV. The element of sexual penetration in count III is subsumed into the element of sexual penetration with force in count IV. Thus, under Minn.Stat. § 609.04, appellant's conviction of count III also must be vacated.

### d. *Effective Assistance of Counsel*

 We find no merit to appellant's contention that he was denied effective assistance of counsel. In order to obtain relief on the basis of ineffective counsel, appellant bears the burden of proving that the public defender's representation "fell below an objective standard of reasonableness" and that a "reasonable probability" exists that "but for counsel's professional errors, the result of the proceeding would have been different." *Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987).

Appellant has failed to direct us to any evidence in the record that his attorney's conduct fell below "an objective standard of reasonableness." *Id.* On the contrary, the record shows that the public defender pre-

sented appellant's pretrial motions and requests to the court, requested a change of venue on the day of trial, and served as stand-by counsel throughout the trial in the event that appellant would have needed his assistance. Further, appellant has made no argument to demonstrate prejudice. *Id.*

### 5. Partial Transcripts

██ Respondent has brought a motion requesting that this court strike the two partial transcripts from appellant's appendix on the grounds that they are not part of the appellate record.

> An appellate court may not base its decision on matters outside the record on appeal, and matters not produced and received in evidence below may not be considered.

*Safeco Ins. Cos. v. Diaz,* 385 N.W.2d 845, 847 (Minn.App.1986), *pet. for rev. denied* (Minn. June 30, 1986); Minn.R.Civ.App.P. 110.01.

The two partial transcripts at issue contain the testimony of both S.L. and M.M. at the Anoka County trial. Appellant used these transcripts to cross-examine the witnesses during his trial in Goodhue County. He did not offer them into evidence, however. In preparation for appeal, the public defender made a motion without hearing for the trial court to supplement the record with these transcripts. The trial court granted the motion the next day, before the state had an opportunity to respond.

██ The state seeks relief from this court under Minn.R.Civ.App.P. 110.05. That rule provides:

> If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and determined by the trial court and the record made to conform. If anything material to either party is omitted from the record by error or accident or is misstated in it, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, or the appellate court, on motion by a party or on its own initiative, may direct that the omission or misstatement be cor-

rected, and if necessary that a supplemental record be approved and transmitted. *Id.* By language of that rule, the modification of the record should occur only to correct an omission or misstatement in the record due to an error or accident. Appellant's conduct does not constitute an error or accident for purposes of this rule. Here, appellant, acting pro se, failed to offer the transcripts into evidence at trial. Minnesota courts require pro se defendants to comply with standard rules of court procedure. *State v. Seifert,* 423 N.W.2d 368, 372 (Minn. 1988). "No extra benefits will be given to *pro se* litigants." *Id.*

██ The court may make an exception and consider evidence outside the record on appeal if the evidence is conclusive and uncontroverted, and only if it is offered for the purpose of affirming the judgment. *Plowman v. Copeland, Buhl & Co.,* 261 N.W.2d 581, 583–84 (Minn.1977). The evidence that appellant presents in his appendix, however, is not conclusive. He offers the transcript to defeat the witnesses' credibility and reverse his conviction. Judging witness credibility is a function of the trial court, not this appellate court. *See Walker,* 394 N.W.2d at 196. Furthermore, we will not accept evidence outside the record for the purpose of reversing a judgment. *Plowman,* 261 N.W.2d at 584.

The trial court erred in granting appellant's motion to supplement the trial court record. Thus, the transcripts are not properly in the appellate court record. We grant respondent's motion to strike the transcripts from appellant's appendix.

### DECISION

Venue for appellant's trial was proper in Goodhue County, the county where M.M. resided and, thus, was "found." The evidence amply supports appellant's convictions. However, because count II arose from the same course of conduct as count I, and count III was a lesser-included offense, the convictions for those two counts must be vacated. We find no bases for relief on the other issues appellant raised in his pro se brief. We grant respondent's motion to strike the partial transcripts from the appellate record.

Affirmed in part, reversed in part, and remanded.